Carter *v.* Young.

CARTER BROS. & CO. *v.* W. F. & R. T. YOUNG & Co. *et al.*

SURETIES. *Administrator's bond.* Testator directed, among other things, that his executors take an inventory of his mercantile establishment, and open a new firm for the benefit of his children, and run the same until youngest child is of age. If the house fails to show a dividend, then the executors might suspend until they shall think it to the interest of the minors to renew said business. They proceeded to administer the estate and opened the new business house, which afterwards contracted debts to insolvency. Suits were brought for debts of the business house against executors and the sureties upon their bond. *Held,* sureties were not liable. They were only liable for matters of administration covered by the bond of the executors as such, and not liable for failure of executors to discharge the trusts imposed by the will.

FROM DECATUR.

Appeal from the Chancery Court at Decaturville. GEO. H. NIXON, Ch.

J. M. PORTERFIELD for complainants.

WOODS & TAYLOR, LOGAN & HAWKINS and PITTS & CUNNINGHAM for defendants.

FREEMAN, J., delivered the opinion of the court.

The only question before us on this appeal is, whether the sureties on the bond of the executors, given on probate of the will of R. Young, deceased, by the executors appointed under said will, are liable for the debt of complainants in the original and amended bills.

The bond is, in the general terms, provided for by our Code, the liability, conditioned on the fact that the named executors "shall well and truly, as such executors, perform all the duties which are, or may be enjoined on them, by law."

A short statement of facts will present the basis for solution of the question presented. Testator seems to have lived on a farm, with his family, and had a mercantile house in the town of Decaturville. He made his will in 1878. By the first clause of which, he provided. for the payment of all the debts he owed, with his funeral expenses, out of the monies that I may die possessed of, or that might first come into the hands of his executors. (except debts against my business house in Decaturville).

In second clause he provided for the payment of any debts against the business house out of cotton at the different gins, as soon as a sufficient amount could be ginned and sold to pay said debts.

After this he directed "an invoice of the business of the business house, and a true inventory rendered of the same—then the name of the old firm to cease, and to open in the name, firm and style of W. F. & R. T. Young & Co., and that the business continue, invoicing once every year, until the youngest child of mine living, arrives at the age of twenty-one, or till the house fails to show a dividend sufficient to be to the interest of the minor heirs, then the business to suspend till my executors shall think it would be to the interest of said minors to renew said business."

He then proceeds to give directions as to details

in carrying on the business. In seventh clause he directs that his farming be carried on, the stock and implements to be used for that purpose, except a mower or reaper, which was to be sold, and the proceeds of farm to go for benefit and support of his wife and children, naming them. In another clause he directs that if a surplus on the farm shall be produced, it shall be sold, and proceeds received by the business house, and passed to the credit of the farm, and be applied to the family if needed.

W. F. and R. T. Young and John P. Raines were appointed executors, and also requested to act as guardians for the minor heirs, of whom he seems to have had several.

The executors seem to have settled up all indebtedness, took the inventory as required, and found assets in the business house at Decaturville—consisting of stock on hand, notes, accounts and monies, amounting to near $4000—whereupon they opened in the new firm name as provided for in the will, and proceeded to business. This business seems to have been so imprudently conducted from 1879 to 1881, that the firm failed, and found an indebtedness against it charged, to amount to nearly $16000, of which the debt of complainant in this bill is part.

The theory of this bill is, that the executors, in carrying on this business, were in execution of the will, and have been guilty of a *devastavit*, or misuse of the funds of the estate employed in the business, have allowed members of the firm recklessly and wrongfully to use the assets, etc., and the question now

before us is whether the sureties on the bond are responsible for the debts incurred in the business by reason of the improper use of the assets dedicated by testator to the business.

There are other questions of interest raised, or attempted to be raised, by the bill, as between the creditor and other parties, such as whether the whole estate of the testator might, in any way, be held liable for the debts that might be incurred in carrying on the business provided for in the will, or only the assets that legitimately belonged to the business and went into it, and were dedicated to this purpose by testator. Upon these questions, we cannot rightly decide, as they are not yet before us. The chancellor dismissed the bill as to the sureties on the bond, from which there was an appeal. We but suggest that the questions raised mentioned above, will be found discussed in the case of *Morrow* v. *Morrow*, 2 Tenn. Ch. R., 549, in an exhaustive review of the authorities.

We think the principle stated in that case, as the proper construction of a will like the one before us, is correct, that is, that in legal effect, it is a legacy to the testator's executors of the property or business in trust, to be carried on for the benefit of the family as provided for. The objects of the trust, as well as the trust fund in this case, being well defined.

Since the cases of *Drane* v. *Bayliss*, 1 Hum., 173-4, and *Hughlett* v. *Hughlett*, 5 Hum., 452-3, it has been uniformly held, that the sureties on the bond were only responsible for the performance of the executional duties as such as defined by law, such as the collec-

tion of the personal assets, the faithful appropria-
tion to the payment of the debts or legacies, and a
proper account of them to the party entitled. That
in case of a trust like the one now under considera-
tion, the proper administration of the same devolved
on the executors, if they were willing to assume them,
as trustees, and for their proper performance they
were to be held responsible in a court of chancery,
but that these duties and trusts were not matters cog-
nizable by the probate court, or matters of adminis-
tration covered by the bond of the executors as such.

This having been so long settled, we do not deem
it necessary again to review the principles on which
it rests. Suffice it to say, it is well settled law.

The result is, the chancellor ruled correctly, that
the sureties on the executors' bond were not responsi-
ble for the debts of complainants, nor the conduct of
the trustees or executors in carrying on the business,
provided for by the will, and his decree will be af-
firmed with costs.